# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NATALIE OKTEN, on behalf of herself
and those similarly situated,

      Plaintiff,

v.

RADIUS GLOBAL SOLUTIONS, LLC;
and JOHN DOES 1 TO 10.,

      Defendant.

Case No. 2:22-cv-00782-ES-CLW

---

## MEMORANDUM IN SUPPORT OF DEFENDANT RADIUS GLOBAL SOLUTIONS, LLC'S MOTION TO DISMISS

Respectfully submitted,

*/s/ Aaron R. Easley*
Aaron R. Easley, Esq.
SESSIONS, ISRAEL & SHARTLE, LLC
3 Cross Creek Drive
Flemington, NJ 08822
Telephone: (908) 237-1660
Facsimile:  877-344-0661
Email: aeasley@sessions.legal
*Counsel for Defendant,*
*Radius Global Solutions, LLC*

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... 3

I.  INTRODUCTION ........................................................................................... 6

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................ 7

III.  LAW AND ARGUMENT ................................................................................ 8

A.  Plaintiff's FDCPA Claims Fail ................................................................ 9

1.  Plaintiff's "return address" claim should be dismissed because the allegations do not satisfy the federal pleading standards ............................................................ 9

2.  Plaintiff's § 1692d(3) claim fails because she does not allege RGS "published" a "list" of debtors ............................................................ 10

3.  Plaintiff's § 1692c(b) claim fails as a matter of statutory interpretation considering the FDCPA as a whole, Congress's intent, the regulatory guidance, and the absurd results that would occur were Plaintiff's allegations accepted. 12

a.  Plaintiff's theory is contrary to Congress's intent ..................................... 14

b.  Plaintiff's theory fails because a letter vendor is a "medium" through which a "communication" is sent ........................................................................ 15

c.  Plaintiff's theory reads the terms "third parties" and "in connection with the collection of a debt" out of § 1692c(b) ...................................................... 18

d.  Plaintiff's theory cannot be reconciled with other language in the FDCPA or decisions from the federal regulatory agencies tasked with implementing and enforcing the FDCPA ................................................................................ 19

e.  Plaintiff's theory would lead to absurd results by prohibiting communications with persons instrumental to the debt collection process 20

B.  Plaintiff's NJCFA Claim Fails Because The Act Does Not Apply To Collectors Who Have No Role In The Underlying Transaction; The Use Of A Letter Vendor Is Not "Deceptive" Or "Unconscionable;" And Plaintiff Alleges No "Ascertainable Loss" ...................................................................................................... 21

C.  Plaintiff's "Invasion Of Privacy" Claim Fails Because Transmitting Information To A Letter Vendor Does Not Qualify As Giving Unreasonable "Publicity" To One's "Private Affairs" ....................................................................................... 23

D.  Plaintiff's Negligence Claim Fails Because RGS Did Not Owe Plaintiff A "Duty" Not To Use A Letter Vendor And/Or Because Plaintiff Does Not Allege She Suffered A Cognizable "Injury" ............................................................................. 26

V.  CONCLUSION .............................................................................................. 29

## **TABLE OF AUTHORITIES**

Page(s)

Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 9
*Avraham v. Golden*,
    2020 WL 2214535 (D.N.J. May 7, 2020) ............................................................ 25
*Barclift v. Keystone Credit Servs.*,
    2022 WL 444267 (E.D. Pa. Feb. 14, 2022) ......................................... 15, 17, 25
*Bolick v. DFS Servs. LLC*,
    2011 WL 4359987 (E.D. Pa. Sept. 16, 2011) .................................................. 24, 25
*Boyko v. Am. Int'l Grp., Inc.*,
    2009 WL 5194431 (D.N.J. Dec. 23, 2009) ....................................................... 22
*Cavazzini v. MRS Assocs.*,
    2021 WL 5770273 (E.D.N.Y. Dec. 6, 2021) ................................................. 14, 15
*Ciccone v. Cavalry Portfolio Servs., LLC*,
    2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) .................................................. 17
*Collins v. Diversified Consultants Inc.*,
    2017 WL 8942568 (D. Colo. Feb. 1, 2017) ...................................................... 28
*Comcast Corp. v. Nat'l Ass'n of African Am.–Owned Media*,
    140 S. Ct. 1009 (U.S. 2020) ............................................................................. 19
*Douglass v. Convergent Outsourcing, Inc.*,
    765 F.3d 299 (3d Cir. 2014) ......................................................................... 10, 13
*Fashakin v. Nextel Communications*,
    2009 WL 790350 (E.D.N.Y. Mar. 25, 2009) .................................................... 17
*Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*,
    945 F. Supp. 2d 543 (D.N.J. 2013) ................................................................... 23
*Gomez v. Forster & Garbus LLP*,
    2019 WL 5418090 (D.N.J. Oct. 22, 2019) ....................................................... 22
*Green v. 712 Broadway, LLC*,
    2018 WL 2754075 (D.N.J. June 8, 2018) ......................................................... 10
*Gregory v. Nationstar Mortg., LLC*,
    2014 WL 1875167 (D.N.J. May 9, 2014) ......................................................... 18

*Hardt v. Reliance Standard Life Ins. Co.*,
  560 U.S. 242 (2010) ................................................................................. 13
*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
  17 F.4th 1016 (11th Cir.) ......................................................................... 16
*In re FDCPA Mailing Vendor Cases*,
  2021 WL 3160794 ............................................................................... 26, 29
*Isaac v. NRA Grp., LLC*,
  377 F. Supp. 3d 211 (E.D.N.Y. 2019) ..................................................... 21
*Ismail v. Ascensionpoint Recovery Servs., LLC*,
  2019 WL 5894311 (N.D. Ala. Nov. 12, 2019) ......................................... 28
*King v. Burwell*,
  135 S. Ct. 2480 (2015) ............................................................................. 13
*Krechner v. Nationstar Mortg. LLC*,
  2015 WL 9260055 (E.D. Pa. Dec. 18, 2015) ........................................... 18
*Kropelnicki v. Siegel*,
  290 F.3d 118 (2d Cir. 2002) ..................................................................... 14
*Lamonaco v. CBS, Inc.*,
  1993 WL 556536 (D.N.J. July 29, 1993) ................................................. 24
*Machleder v. Diaz*,
  801 F.2d 46 (2d Cir. 1986) ....................................................................... 23
*Madison v. Res. for Hum. Dev., Inc.*,
  233 F.3d 175 (3d Cir. 2000) ..................................................................... 19
*Meyer v. Holley*,
  537 U.S. 280 (U.S. 2003) ......................................................................... 19
*Michelo v. Nat'l Collegiate Student Loan*,
  419 F. Supp. 3d 668, *Tr. 2007* (S.D.N.Y. 2019) ................................... 20
*Moskal v. United States*,
  498 U.S. 103 (1990) ................................................................................. 11
*Nuamah-Williams v. Frontline Asset Strategies, LLC*,
  2022 WL 901525 (D.N.J. Mar. 28, 2022) ..................................... 7, 26, 27
*OneBeacon Am. Ins. Co. v. Urb. Outfitters, Inc.*,
  625 F. App'x 177 (3d Cir. 2015) .............................................................. 11
*Perkins v. AT&T Mobility, LLC*,
  2011 WL 13238623 (D.N.J. Feb. 17, 2011) ............................................. 22
*Pettus v. Morgenthau*,
  554 F.3d 293 (2d Cir. 2009) ..................................................................... 13
*Pinkney v. Meadville, Pennsylvania*,
  2020 WL 1985037 (W.D. Pa. Apr. 27, 2020) ........................................... 25
*Pub. Citizen v. U.S. Dep't of Just.*,
  491 U.S. 440 (1989) ........................................................................... 13, 14
*R.D.D. Assocs., LLC v. Windsor Benefit Consultants, Inc.*,
  2005 WL 8176022 (D.N.J. Mar. 22, 2005) ............................................... 27

*Robinson v. Shell Oil Co.*,
   519 U.S. 337 (1997) ................................................................................. 13
*Rodriguez-Ocasio v. L. Offs. of Joseph Molinaro, LLC*,
   2018 WL 1773544 (D.N.J. Apr. 13, 2018) ............................................... 25
*Shanus v. Robert Edward Auctions, LLC*,
   2013 WL 393950 (D.N.J. Jan. 30, 2013) ................................................. 12
*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................. 12, 24, 29
*Yingst v. Novartis AG*,
   63 F. Supp. 3d 412 (D.N.J. 2014) ........................................................... 22

Statutes

15 U.S.C. § 1692 ............................................................................................ 6
15 U.S.C. § 1692a(2) .................................................................................... 15
15 U.S.C. § 1692c(b) .............................................................................. Passim
15 U.S.C. § 1692d(3) .............................................................................. 11, 12
15 U.S.C. § 1692f(8) ........................................................................ 9, 10, 17
15 U.S.C. §§ 1692b(5) ................................................................................. 16
15 U.S.C. §§ 1692f(5) .................................................................................. 16
N.J. Stat. § 56:8–2 ................................................................................... 6, 22

Rules

Federal Rule of Civil Procedure 12(b)(6) .................................................. 6, 8

Regulations

86 FR 5766-01 ............................................................................................. 20
Statements of General Policy or Interpretation Staff Commentary On the Fair Debt
   Collection Practices Act,
   53 Fed. Reg. 50097 (Dec. 13, 1988) ................................................. 17, 20

Other Authorities

2A C.J.S. Agency § 1 (2022) .................................................................. 19, 29
77 C.J.S. Right of Privacy and Publicity § 32 (same) ................................. 24
Restatement (Second) of Agency § 186 (Am. L. Inst. 1958) .................. 19, 29
Restatement (Second) of Torts § 652B ....................................................... 24
Restatement (Second) of Torts § 652D (Am. L. Inst. 1977) ............. 11, 24, 25
S. Rep. No. 95–832 .............................................................................. 11, 14

# I.  INTRODUCTION

Defendant, Radius Global Solutions, LLC ("RGS"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this Memorandum in Support of its Motion to Dismiss ("the Motion") the claims asserted by Plaintiff, Natalie Okten.

This putative class action is one of scores pending in this Court arguing that it is unlawful for a debt collector to use a letter vendor to undertake the rote task of printing and sending a letter. Here, Plaintiff alleges that RGS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, because: (1) it transmitted information to its letter vendor; and (2) "upon information and belief," the return address on the complained-of letter "does not belong to RGS." Plaintiff also argues that by sending information to its letter vendor, RGS violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. § 56:8–2, and committed the torts of "unreasonable publicity given to one's private life," and "negligence." Plaintiff's claims should be dismissed.

Plaintiff's "return address" claim should be dismissed because Plaintiff does not allege the address was viewable on the outside of the letter, and the remainder of Plaintiff's allegations are too boilerplate and conclusory to comply with the federal pleading standards. Plaintiff's theory that RGS's transmitting of information to its letter vendor violates the FDCPA, while colorable at first blush, falls apart under fundamental rules of statutory construction. In short, it is contrary to Congress's intent, the overall statutory scheme, and guidance from the regulatory bodies tasked with implementing the FDCPA—the Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB")—and it would lead to absurd results.

Plaintiff's state law claims fail as a matter of law—in fact, this Court recently dismissed virtually identical claims in another suit filed by opposing counsel. *See Nuamah-Williams v. Frontline Asset Strategies, LLC, et al.*, 2022 WL 901525 (D.N.J. Mar. 28, 2022). Plaintiff's NJCFA claim fails because the act does not apply to downstream debt collectors, the use of a letter vendor is not "deceptive" or "unconscionable," and Plaintiff alleges no "ascertainable loss" due to RGS's conduct. Plaintiff's "unreasonable publicity" claim fails because, *inter alia*, transmitting information to a company hired to perform a task does qualify as "publicity" for purposes of the tort. Finally, the FDCPA does not give rise to common law negligence duties, and even if it did, Plaintiff alleges no injury beyond the breach of the supposed "duty" not to use a letter vendor.

In sum, Plaintiff has failed to state a plausible claim for relief, and the Court should grant this Motion and dismiss Plaintiff's claims.

## II.  <u>FACTUAL BACKGROUND</u>

This putative class action suit was filed in New Jersey state court, and subsequently removed to this Court on February 11, 2022.  Dkt. 1.  In the Amended Complaint ("the Complaint"), Plaintiff alleges:

- On January 9, 2021, RGS sent her a letter ("the Letter") to collect a debt ("the Debt"). Dkt. 8 at ¶ 33.

- "Upon information and belief, [the Letter] was mailed using a third-party letter vendor." *Id.* at ¶ 36.

- Using a letter vendor required RGS to transmit "information about [the Debt] including the account number associated with the debt and the alleged balance due."

*Id.* at ¶ 45.

- "Upon information and belief, the return address [on the Letter]—P.O. Box 1259, Dept. #120957 Oaks, PA 19456—does not belong to RGS." *Id.* at ¶ 53.

From these mundane factual allegations, Plaintiffs asserts a variety of claims under the FDCPA and New Jersey state law. In particular, Plaintiff asserts that by transmitting information to its letter vendor, RGS violated both § 1692c(b) and § 1692d(3). *Id.* at ¶ 51. Plaintiff also asserts that because the return mail address on the Letter allegedly did not belong to RGS, RGS violated § 1692(f)(8) of the FDCPA. *Id.* at ¶ 53.

As for her state law claims, Plaintiff asserts RGS violated the NJCFA, alleging, in conclusory fashion, that RGS "engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations" and that she "suffered ascertainable loss from Defendant's [NJCFA] violations." *Id.* at ¶¶ 83-86. Plaintiff asserts a general negligence claim, alleging in a conclusory fashion that RGS breached its supposed "duty to maintain the confidentiality" of her information, and that she "suffered a compensable loss arising from the disclosure" to RGS's letter vendor. *Id.* at ¶¶ 88-94. Finally, Plaintiff asserts that by transmitting information to its letter vendor, RGS committed the tort of "unreasonable publication of private facts." *Id.* at ¶¶ 96-103.

### III.   LAW AND ARGUMENT

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are subject to a two-pronged standard of review. First, the Court isolates the well-pleaded factual allegations from recitations of the elements of the cause of action and/or conclusory, "naked assertions" devoid of "further factual enhancement," the latter of which must be

disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Next, the Court determines whether the well-pleaded factual allegations, if presumed true, state a plausible claim for relief. *Id.* This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

The Court should dismiss Plaintiff's claims because the factual allegations, even if presumed true, do not state a plausible claim for relief.

### A. Plaintiff's FDCPA Claims Fail

Plaintiff asserts three distinct FDCPA claims—one based on the return mail address on the Letter and two arising from RGS's transmitting of information to its letter vendor. As explained below, each claim fails as a matter of law.

### 1. Plaintiff's "Return Address" Claim Should Be Dismissed Because The Allegations Do Not Satisfy The Federal Pleading Standards

Section 1692f of the FDCPA prohibits the use of "unfair or unconscionable" means to collect a debt and contains an illustrative list of prohibited conduct, which includes: "Using any language or symbol, other than the debt collector's address, *on any envelope* when communicating with a consumer by use of the mails or by telegram." 15 U.S.C. § 1692f(8) (hereinafter, "§ 1692f(8)") (emphasis added). Plaintiff asserts RGS violated § 1692f(8) because "[u]pon information and belief, the return address [on the Letter]—P.O. Box 1259, Dept. #120957, Oaks, PA 19456 [(hereinafter, "the P.O. Box")]—does not belong to RGS." Dkt. 1 at ¶ 53.

Plaintiff's allegations are insufficient to survive dismissal for two reasons. ***First, Plaintiff does not allege that the P.O. Box was printed "on the envelope" to the Letter,***

*nor does she allege that the P.O. Box was visible from the outside of the envelope.* As noted by the Third Circuit, the purpose of § 1692f(8) is to "screen from public view information pertinent to the debt collection." *Douglass v. Convergent Outsourcing, Inc.*, 765 F.3d 299, 302 (3d Cir. 2014). Thus, absent an allegation that the P.O. Box was viewable from the outside of the envelope, Plaintiff's claim necessary fails.

**<u>Second</u>, Plaintiff's allegation that "upon information and belief," the P.O. Box "does not belong to RGS" does not satisfy the federal pleading standards.** Pleading on "information and belief" is permissible only where "the requisite factual information is peculiarly within the defendant's knowledge or control" and the allegation is not "boilerplate or conclusory." *Green v. 712 Broadway, LLC*, 2018 WL 2754075, *5 (D.N.J. June 8, 2018). Plaintiff's allegation simply parrots the essential element of her cause of action without providing the Court with any factual basis for the allegation, i.e., what "information" her "belief" is based on.

For the foregoing reasons, the Court should conclude the allegations in the Complaint do not satisfy the federal pleading standards and dismiss Plaintiff's "return address" claim.

### 2. Plaintiff's § 1692d(3) Claim Fails Because She Does Not Allege RGS "Published" A "List" Of Debtors

Section § 1692d of the FDCPA broadly prohibits conduct "the natural consequence of which is to harass, oppress, or abuse" consumers, and contains an illustrative list of prohibited conduct. It includes § 1692d(3), which prohibits: "The *publication* of a *list* of consumers who allegedly refuse to pay debts," except in certain situations that do not apply

here. 15 U.S.C. § 1692d(3). This provision is intended to prevent the "the publishing of 'shame lists,'" similar to the posting of a dishonored check at a business. S. REP. NO. 95–832. Plaintiff's allegations fail to state a plausible claim for relief.

**For starters, Plaintiff does not allege RGS transmitted a "list" of consumers—plural—to its letter vendor.** She only alleges that RGS sent information about *her* to its letter vendor. *See generally* Dkt. 1.

**Further, RGS's sending her information to its letter vendor does not qualify as a "publication."** The FDCPA does not define the word "publication," and when a statutory term is undefined and the term has a standard common law meaning, courts apply the common law meaning. *Moskal v. United States*, 498 U.S. 103, 117 (1990). In the absence of a standard common law meaning, courts look to common usage, like dictionary definitions of the term. *OneBeacon Am. Ins. Co. v. Urb. Outfitters, Inc.*, 625 F. App'x 177, 180 (3d Cir. 2015).

The term "publication" has a well-understood meaning under the common law, particularly where alleged "third-party" disclosures are involved. For instance, the common law recognizes a tort for "unreasonable *publication* of private facts." In this context, "publication" is akin to "publicity," and it requires "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. In other words, the term "publication" implies dissemination to the public—and not simply putting something in print. *OneBeacon*, 625 F. App'x at 180 (relying on dictionary definitions and concluding "publication" "means

11

provision of information to the public at large"); *Shanus v. Robert Edward Auctions, LLC*, 2013 WL 393950, *4 (D.N.J. Jan. 30, 2013) (the "date of publication" for purposes of a defamation claim is the date "upon which the offending material became generally available to the public"). In fact, the U.S. Supreme Court just recently rejected the notion that transmitting information to a letter vendor qualifies as a "publication." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210, n.6 (2021).

Here, Plaintiff does *not* allege RGS transmitted information to anyone but its letter vendor, much less the public generally. In fact, she does not even allege that any individual employee of RGS's letter vendor saw the information—as opposed to the information being assimilated into letters, printed, and sent, via automated process. This does not qualify as a "publication," and Plaintiff's purported § 1692d(3) claim should be dismissed.

3. **Plaintiff's § 1692c(b) Claim Fails As A Matter Of Statutory Interpretation Considering The FDCPA As A Whole, Congress's Intent, The Regulatory Guidance, And The Absurd Results That Would Occur Were Plaintiff's Theory Accepted**

Plaintiff asserts that by sending her a letter through a letter vendor, RGS violated § 1692c(b) of the FDCPA, which states:

> **Communications with third parties**
>
> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt

collector.

15 U.S.C. § 1692c(b) (emphasis in original). Read literally and in isolation, § 1692c(b) arguably supports Plaintiff's theory. However, Plaintiff's theory fails according to several principles of statutory construction.

Generally speaking, if the language of a statutory provision is "plain," the court must enforce the "plain meaning." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). However, in deciding whether a particular statutory provision is "plain," courts do not view the provision "literally or in isolation," as Plaintiff proposes. *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). Rather, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). This is so because, "oftentimes the 'meaning— or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 135 S. Ct. 2480, 2483 (2015). A federal court's "duty, after all, is to construe statutes, not isolated provisions." *Id.* at 2488. "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 455 (1989).

Further, even where the statutory language is "plain," courts decline to apply the "plain" meaning where it is either at odds with Congress's intent or would lead to absurd results. *Douglass*, 765 F.3d at 302. *See also Pub. Citizen* 491 U.S. at 455 ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees . . .

seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists'"). Under such circumstances, courts will decline to apply the literal interpretation of the statute and presume "the legislature intended exceptions to its language [that] would avoid results of this character." *Id.*

With these principles in mind, Plaintiff's theory that the FDCPA bars the use of a letter vendor fails for several reasons.

### a. Plaintiff's Theory Is Contrary To Congress's Intent

When the FDCPA was passed in 1977, there were no laws governing debt collection and some highly objectionable practices ran rampant. One of the practices Congress singled-out was a debt collector's "disclosing a consumer's personal affairs to friends, neighbors, or an employer*,"* in effect, to shame the consumer into making payment. *Cavazzini v. MRS Assocs.*, 2021 WL 5770273, *6 (E.D.N.Y. Dec. 6, 2021) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) and S. REP. NO. 95–382, at 2 (1977)). As explained by the Eastern District of New York:

> The third-party communications listed above involve debt collectors' reaching out to third parties—friends, neighbors, and employers—whose knowledge of the debt would likely embarrass a reasonable person. ***Thus, it appears Congress intended to target certain especially harmful debt collection practices—not all communications by debt collectors to third parties.*** This conclusion is further supported by the fact that the drafters of the FDCPA were also responding to the common-law background. The drafters explicitly countered common-law courts' disinterest in debt-related communications to employers by specifically prohibiting certain communications to debtors' employers. ***The drafters did not, however, similarly single out stenographers or clerks, despite their frequent***

14

> ***involvement in preparing and sending written communications. In many ways, a mailing vendor is a modern-day stenographer or clerk, briefly viewing the information for the purpose of creating and/or processing a communication.*** At any rate, its delimited role is closer to that of a stenographer or clerk than that of an employer, whose knowledge of an employee's debt (and authority over the employee) could result in economic and/or reputational consequences for that employee. In sum, passing on a debtor's information to a company for the sole purpose of creating a mailing does not appear to be one of the "unfair, deceptive, or harassing behavior[s]" the FDCPA is meant to target.

*Cavazzini*, 2021 WL 5770273, at *6 (emphasis added). *See also Barclift v. Keystone Credit Servs., Inc.*, 2022 WL 444267, *9 (E.D. Pa. Feb. 14, 2022) (noting that Congress's intent in including § 1692c(b) was preventing disclosures to those knowing the consumer and affecting his or her reputation, not to companies hired to perform tasks like printing and sending a letter).

### b. Plaintiff's Theory Fails Because A Letter Vendor Is A "Medium" Through Which A "Communication" Is Sent

Plaintiff alleges RGS violated § 1692c(b), which reads in relevant part: "a debt collector may not communicate, in connection with the collection of any debt, with any *person* other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b) (emphasis added). "Communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person *through any medium*." 15 U.S.C. § 1692a(2).

A letter vendor is a "medium" under the plain meaning of that term at the time the FDCPA was passed. Webster's Third International Dictionary defines "medium" as

"something through or by which something is accomplished, conveyed, or carried on" as "an intermediate or direct instrumentality or means, specially "a channel, method, or system of communication, information, or entertainment." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 481 (1961). Thus, the plain meaning of the word "medium" encompasses a letter vendor.

That a letter vendor qualifies as a "medium" is confirmed by other parts of the FDCPA. In particular, the statute envisions the use of a variety of different providers through which a debt collector can convey information to the consumer, including: telegram operators (15 U.S.C. §§ 1692b(5); 1692f(5); 1692f(8)), telephone service providers (15 U.S.C. §§ 1692f(5); 1692d(5)), and mail carriers (15 U.S.C. § 1692b(5); 1692g(a)(4),(b)).

A debt collector's authority to act through a telegram operator is particularly telling of Congress's intent and contrary to Plaintiff's interpretation of § 1692c(b). To send a communication to a consumer via telegram, a debt collector necessarily must convey to the telegram operator the information to be included in the telegram. Yet under Plaintiff's interpretation of § 1692c(b), debt collectors are prohibited from using telegram operators, which is contrary to the plain language of § 1692f(5). *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016, 1045-46 (11th Cir.), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021) (noting that § 1692f(5) "presupposes that debt collectors could use telegrams, even though that means the contents of the telegram would be transmitted through a telegram operator") (Tjoflat, J., dissenting). For this reason, courts have concluded that reading the FDCPA to prohibit the use of a letter vendor is contrary to

16

Congress's intent considering the statute as a whole. *See Ciccone v. Cavalry Portfolio Servs., LLC*, 2021 WL 5591725, *5 (E.D.N.Y. Nov. 29, 2021) (concluding that Congress's inclusion of § 1692f(8) undermined plaintiff's theory that § 1692c(b) purports to prohibit communications with vendors, like letter vendors); *Barclift*, 2022 WL 444267, *9 (same).

Alternatively, and at a minimum, Congress's approval of using telegram operators to contact a consumer renders the term, "medium," ambiguous such that the Court may consider extra-textual authority to divine Congress's intent. There is a wealth of authority confirming that the use of service providers to convey information is permitted under the FDCPA.

For instance, the FTC—which Congress tasked with implementing and enforcing the FDCPA—has confirmed that transmitting information to a telegraph operator is permissible "to enable the collector to transmit the message to, or make contact with, the consumer." *Fashakin v. Nextel Communications,* 2009 WL 790350, at *8 (E.D.N.Y. Mar. 25, 2009) (quoting FTC, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988)). The FTC's interpretation is sensible, tethered to the statutory text, and should guide this Court's interpretation of the statute.

And there is no meaningful distinction between a telegraph operator and a letter vendor, in that both simply assimilate information into a communication and then transmit the communication to the consumer. Thus, a letter vendor is more accurately classified as a "medium" through whom a "communication" is sent rather than a third-party to whom a communication is made. Accordingly, the Court should hold that RGS's transmitting

information to its letter so that the vendor could print and send Plaintiff a letter did not violate § 1692c(b).

### c. Plaintiff's Theory Arbitrarily Reads The Terms "Third Parties" And "In Connection With The Collection Of A Debt" Out Of § 1692c(b)

The phrase "in connection with the collection a debt" limits the scope of communications which are covered by the FDCPA. The FDCPA applies only to communications where the "animating purposes" is to "induce payment." *Krechner v. Nationstar Mortg. LLC*, 2015 WL 9260055, *3 (E.D. Pa. Dec. 18, 2015); *Gregory v. Nationstar Mortg., LLC*, 2014 WL 1875167 (D.N.J. May 9, 2014). In deciding whether a communication's "animating purpose" is to "induce payment," courts consider: (1) the relationship between the parties; (2) the purpose and context; and (3) whether there is a demand for payment. *Id.* Critically, courts have concluded that even letters sent by a debt collector directly to the debtor and which include information about the debt, do not necessarily qualify. *See, e.g.*, *Gregory*, 2014 WL 1875167, at *4 (letter sent merely to convey information about a debt was not an attempt to induce payment and the FDCPA did not govern); *Krechner*, 2015 WL 9260055, at *4 (same).

*Each factor favors concluding RGS's transmitting information to its letter vendor is not subject to § 1692c(b).* The transmittal was not between a debt-collector and consumer (or someone who knows the consumer); it was between a debt collector and a business hired to perform a particular task. RGS sent the information solely so that the information could be assimilated into the letters sent to Plaintiff. While the letter the vendor ultimately printed and sent demanded payment, the letter and the underlying transmission are *separate*

18

communications.

Further, Congress is presumed to legislate against the backdrop of the common law. *Comcast Corp. v. Nat'l Ass'n of African Am.–Owned Media*, 140 S. Ct. 1009, 1016 (U.S. 2020). For Congress to abrogate a common-law principle, "the statute must 'speak directly to the question addressed by the common law." *Meyer v. Holley*, 537 U.S. 280, 285 (U.S. 2003). Under long-standing common law agency principles, those hired to perform a specific task are not "third-parties" and communications with them are not "third-party communications." 2A C.J.S. Agency § 1 (2022) ("[A] principal is considered to have done himself or herself what he or she does by acting through another person."); Restatement (Second) of Agency § 186 (Am. L. Inst. 1958) (noting that one "who acts for or on behalf of the principal, is a 'party' to that principal's contractual and business relations and not a third party thereto.").

Taken together, RGS's transmitting data to its letter vendor so that the letter vendor could send a letter on RGS's behalf is not a "third-party" communication "in connection with the collection of a debt," and § 1692c(b) does not apply.

### d. Plaintiff's Theory Is Contrary To Decisions From The Federal Regulatory Agencies Tasked With Implementing And Enforcing The FDCPA

The CFPB and FTC have expressly approved of the use of service providers—and specifically, letter vendors. And in construing a statute, courts consider the decisions of the Congressionally empowered agencies as binding, and that the very least, highly persuasive. *Madison v. Res. for Hum. Dev., Inc.*, 233 F.3d 175, 187 (3d Cir. 2000).

For example, the FDCPA requires a debt collector to provide certain notices to consumers, and the FTC has said a debt collector can provide these notices through a service provider. FTC Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02 (1988)(emphasis added). The FTC has also said that a debt collector can use a service provider for purposes of translating communications with non-English speakers, noting such communications are "incidental contact" rather than a communication with a third party in connection with an attempt to collect a debt.  *See* FTC Opinion, LeFevre to Zbrzeznj (Sept. 21, 1992).

And in 2019, the CFPB issued an exhaustive 650-page rulemaking regarding the FDCPA. *See* 86 FR 5766-01. Therein, ***the CFPB noted that "over 85 percent of debt collectors surveyed by the Bureau reported using letter vendors." Id.*** (emphasis added). ***Rather than express concern over the widespread use of letter vendors, the CFPB confirmed that debt collectors may continue to include their letter vendors' addresses in collection letters. Id.***

> **e.  Plaintiff's "Letter Vendor" Theory Would Lead To Absurd Results By Prohibiting Communications With Persons Instrumental To The Debt Collection Process**

Again, Plaintiff's theory is that a debt collector may only discuss a debt with its attorneys, the creditor (or its attorneys), and the consumer (and his or her attorney). Who does this leave out? For starters, it leaves out the courts and their staff. Nothing in § 1692c(b) permits communicating with a court or its staff and nothing in the FDCPA exempts communications with a court or its staff. In fact, courts have repeatedly held that communications with the court are subject to the FDCPA generally. *Michelo v. Nat'l*

*Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 702 (S.D.N.Y. 2019) (concluding FDCPA prohibition on "deceptive" statements applies to statements made in court filings). Under Plaintiff's reading of § 1692c(b), debt collectors would be barred from communicating with courts and their staff.

Plaintiff's hyper-literal reading of § 1692c(b) would also prohibit debt collectors from communicating with their employees. Under the FDCPA debt collectors and their employees are separate entities and employees may be held individually liable for conduct during the collection process. *See Isaac v. NRA Grp., LLC*, 377 F. Supp. 3d 211, 216 (E.D.N.Y. 2019), *aff'd*, 798 F. App'x 693 (2d Cir. 2020) (collecting cases and holding that debt collector and their officers and employees may be held individually liable under the FDCPA).

Finally, Plaintiff's theory would potentially prohibit debt collectors from simply using the phone or internet in the collection process. When a debt collector uses the phone or internet it necessarily must transmit information to and through the telephone/internet service provider. Thus, one could argue that by using the phone or the internet, the debt collector has "communicated" with a third-party in violation of the FDCPA. Yet that would be absurd. Plaintiff's theory of liability is not much different.

For the foregoing reasons, the Court should decline to read § 1692c(b) to prohibit a debt collector from transmitting information to a letter vendor to undertake the rote task of printing and sending a collection letter.

**B. Plaintiff's NJCFA Claim Fails Because The Act Does Not Apply To Collectors Who Have No Role In The Underlying Transaction; The Use Of A Letter Vendor Is Not "Deceptive" Or "Unconscionable;" And Plaintiff Alleges No**

21

"**Ascertainable Loss**"

Plaintiff's NJCFA claim fails for three reasons. ***First, the Act does not apply to downstream debt collectors, like RGS.*** The NJFCA "prohibits the use of unconscionable commercial practices or fraud 'in connection with the sale' of merchandise or real estate." *Perkins v. AT&T Mobility, LLC*, 2011 WL 13238623, *1 (D.N.J. Feb. 17, 2011) (citing N.J. Stat. § 56:8–2). It does *not* apply companies that have no role in the underlying transaction. *Id.* Accordingly, courts have unanimously concluded that third-party debt collectors like RGS—whose only role is in attempting to collect the amount owed pursuant to a completed transaction—are not subject to the NJCFA. *See, e.g., id.*; *Boyko v. Am. Int'l Grp., Inc.*, 2009 WL 5194431, *4 (D.N.J. Dec. 23, 2009). Opposing counsel should know as much, as they were on the losing end of at least one such case. *See, e.g.*, *Gomez v. Forster & Garbus LLP*, 2019 WL 5418090, *6 (D.N.J. Oct. 22, 2019).

***Second*, RGS's using a letter vendor does not qualify as "deceptive" or "unconscionable."** It is not "deceptive," and the Complaint does not articulate how it could be. For example, Plaintiff does not allege RGS indicated it would not use a letter vendor to send her a letter or that she detrimentally relied on (or even could have detrimentally relied on) such a representation. The NJCFA does not define the term "unconscionable," but courts have interpreted it to encompass only conduct that lacks "good faith" and "observance of fair dealing." *Yingst v. Novartis AG*, 63 F. Supp. 3d 412, 415–16 (D.N.J. 2014). It strains the imagination to conceive of how using a letter vendor to simply send a letter could qualify as "bad faith" or "unfair dealing"—particularly where the federal agencies tasked with overseeing debt collectors have approved of the practice.

***Third,* Plaintiff does not make any well-pled allegations that she suffered an "ascertainable loss," i.e., an economic loss.** *See Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 552 (D.N.J. 2013) (explaining an "ascertainable loss" is an essential element of a NJCFA claim and requires a loss of money or property). The Complaint alleges—in conclusory fashion—that Plaintiff suffered an "ascertainable loss," but she does not explain what the loss was or to what it related. Plaintiff's allegation is the quintessential conclusory allegation that simply parrots the elements of her cause of action that is insufficient to comply with the federal pleading standards. For this reason, the Court recently dismissed another "letter vendor" NJCFA claim in a case brought by opposing counsel and asserting the same boilerplate allegations. *See Nuamah-Williams*, 2022 WL 901523 at *3 (noting that an "ascertainable loss" under the NJCFA requires an "out of pocket" loss or a loss of the "benefit of the bargain" between the plaintiff and defendant, neither of which were alleged).

In sum, Plaintiff has failed to state a plausible claim for relief under the NJCFA and dismissal is proper.

## C. Transmitting Information To A Letter Vendor Does Not Qualify As Giving Unreasonable "Publicity" To One's "Private Affairs"

Plaintiff asserts that by sending information to its letter vendor, RGS committed the tort of "invasion of privacy." There is no free-standing "invasion of privacy" tort; instead, there are four separate "invasion of privacy" torts: (1) "unreasonable publication of private facts;" (2) "defamation;" (3) "intrusion upon seclusion;" and (4) "appropriation of name and likeness." *Machleder v. Diaz*, 801 F.2d 46, 52 (2d Cir. 1986). The latter three do not

23

apply,[1] and the Complaint does not allege otherwise. *See* Dkt. 8 at ¶ 96 (alleging RGS "invaded the privacy of Plaintiff by unreasonable publication of private facts").

In New Jersey, the tort of "unreasonable publication of private facts" is called "unreasonable *publicity* given to one's private life," and New Jersey follows the Restatement of Torts to determine what qualifies. *Lamonaco v. CBS, Inc.*, 1993 WL 556536, *3 (D.N.J. July 29, 1993), *aff'd*, 27 F.3d 557 (3d Cir. 1994). The tort applies where: (1) the defendant "publicizes" facts about the plaintiff; (2) the publicized facts are "private facts;" (3) the facts are not of public concern; and (4) the publication would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652D (Am. L. Inst. 1977).

RGS's transmitting information to its letter vendor does not qualify as "publicity." "Publicity" requires "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a; 77 C.J.S. Right of Privacy and Publicity § 32 (same); *Bolick v. DFS Servs. LLC*, 2011 WL 4359987, *2

---

[1] "Defamation" requires publication of *false* and defamatory information. Plaintiff does not allege RGS sent false information to its letter vendor, and the U.S. Supreme Court has rejected the notion that sending information to a letter vendor, without more, qualifies as "publication" for purposes of defamation. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210, n.6 (2021). "Intrusion upon seclusion" requires that the defendant force its way into the plaintiff's solitude in a highly offensive way, e.g., by making incessant phone calls to the plaintiff's home, wiretapping the plaintiff or peering into her windows to "oversee or overhear the plaintiff's private affairs." Restatement (Second) of Torts § 652B. It does not apply here because RGS did not "intrude on plaintiff's seclusion" to get her data. Plaintiff left the privacy of her home, incurred a debt, admittedly failed to repay it, and her information was given to RGS by her creditor. "Appropriation of name or likeness" does not apply here because RGS did not pretend to be Plaintiff in any way.

(E.D. Pa. Sept. 16, 2011) (same). It is not enough "to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id. See, e.g., Barclift*, 2022 WL 444267, *8 (collecting cases holding that transmitting information to a letter vendor does not rise to the level of publicity for purposes of the tort); *Avraham v. Golden*, 2020 WL 2214535, *8 (D.N.J. May 7, 2020) (concluding that the defendant's sending details about the plaintiff's sex life to a handful of people did not qualify, but that posting a publicly viewable YouTube video discussing those same facts did); *Bolick*, 2011 WL 4359987, *2 (concluding that the defendant's communicating information about the plaintiff to one other, unrelated company did not rise to the level of publicity).

Further, the barebones information RGS transmitted (the account balance and number) are not akin to the "private facts" covered by the tort. The covered "private facts" are those that relate to "intimate details of a man's life in his home," like "sexual relations" and "family quarrels," "unpleasant or disgraceful illnesses," etc. Restatement § 652D, cmt. b. The balance and account number of the Debt, while "personal," in that they relate to Plaintiff, are unlike the "private facts" covered by the tort. *Pinkney v. Meadville, Pennsylvania*, 2020 WL 1985037, *3 (W.D. Pa. Apr. 27, 2020) (noting "a person's home address is not ordinarily a private fact sufficient to support an action for publication of private facts"); *Rodriguez-Ocasio v. L. Offs. of Joseph Molinaro, LLC*, 2018 WL 1773544, *1 (D.N.J. Apr. 13, 2018) (concluding that a certification made publicly available by the defendant, and which "contained the full account number, Plaintiffs' minor's name, dates of services, medical and/or insurance codes, [and a] description of medical services" were not "private facts," the disclosure of which would be "highly offensive to a reasonable

person" for purposes of the tort).

Finally, a debt collector's transmitting this type of barebones information to a letter vendor would not be "highly offensive to a reasonable person." *In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, *6. This is particularly true where, as here, Plaintiff does not deny that she went out into the world, incurred the relevant debt, and failed to repay it, and does not allege that the information was transmitted to persons not involved in the collection process.

For these reasons, and in an virtually identical "letter vendor" case brought through opposing counsel, the Court recently dismissed the plaintiff's "invasion of privacy claims" concluding that: (1) "sharing of [the p]laintiff's information to a mail vendor does not constitute 'publicizing' as it was not communicated to the public at large nor is [the p]laintiff's private information substantially certain to become public knowledge;" and (2) the "disclosure of the debt information to a mail vendor for purposes of mailing collection letters on its behalf is not of a kind that would be offensive to a reasonable person." *Nuamah-Williams*, 2022 WL 901525 at *5.

**D. Plaintiff's Negligence Claim Fails Because RGS Did Not Owe Plaintiff A "Duty" Not To Use A Letter Vendor And/Or Because Plaintiff Does Not Allege She Suffered A Cognizable "Injury"**

Finally, Plaintiff asserts that by sending information to its letter vendor, RGS committed the tort of general negligence, alleging, in conclusory fashion, that RGS breached its supposed "duty to maintain the confidentiality of [Plaintiff's] private and financial information" and that she "suffered a compensable loss arising from the disclosure of their protected private and financial information."  Dkt. 8 at ¶¶ 88-93.

26

In New Jersey, as in most States, there are four elements to a general negligence claim: (1) the defendant owed the plaintiff a particular duty of care; (2) the defendant breached the duty of care; (3) the breach caused the plaintiff injury; and (4) the injury is of the type for which a plaintiff may recover in a tort action. *R.D.D. Assocs., LLC v. Windsor Benefit Consultants, Inc.*, 2005 WL 8176022, *3 (D.N.J. Mar. 22, 2005). ***Notably, this Court just recently dismissed the plaintiff's negligence claim in another, virtually identical "letter vendor" case brought by opposing counsel.*** *See Nuamah-Williams*, 2022 WL 901525 at *4. The Court concluded there were no "policy or fairness considerations for the Court to impose a duty of care" not to use a letter vendor and that, regardless, the plaintiff had not alleged the defendant's use of a letter vendor caused her a cognizable injury. *Id.* at *4.

This Motion focuses on the "duty" and "injury" factors but, to be clear, RGS does not concede the "breach" or "causation" elements are met.

Starting with the "injury" element, Plaintiff's claim fails because the Complaint lacks well-pleaded allegations that, if presumed true, establish she suffered an injury sufficient for tort liability. Plaintiff simply parrots the "injury" element of her cause of action, alleging she suffered "compensable loss." But what the "loss" was, or why it is "compensable," Plaintiff does not say. *Id.* Dismissal is proper because Plaintiff's boilerplate, conclusory allegation does not satisfy the federal pleading standards announced in *Twombly* and *Iqbal*.

The Complaint also fails to include well-pleaded allegations establishing how or why RGS owed Plaintiffs a "duty" not to use a letter vendor. As with the "injury" element,

Plaintiffs' "allegation" that RGS owed her a "duty to maintain the confidentiality of their private and financial information" is a boilerplate legal conclusion devoid of any factual enhancement.  It therefore fails to satisfy the federal pleading standards.

To the extent Plaintiff's theory is that the FDCPA created a tort-based "duty" not to transmit information to its letter vendor, her theory fails because the FDCPA does not give rise to common law negligence duties. *Collins v. Diversified Consultants Inc.*, 2017 WL 8942568, at *25–26 (D. Colo. Feb. 1, 2017), *report and recommendation adopted*, 2017 WL 971528 (D. Colo. Mar. 13, 2017), *aff'd*, 754 F. App'x 714 (10th Cir. 2018) (collecting cases and explaining a purported FDCPA claim does not support a general negligence claim because the FDCPA "is a federal remedial statute which is not based on any traditional tort law principles"); *Ismail v. Ascensionpoint Recovery Servs., LLC*, 2019 WL 5894311, *9 (N.D. Ala. Nov. 12, 2019) (collecting cases).

Finally, and Plaintiff's insufficient pleading aside, the Court should conclude that RGS did not owe Plaintiff a tort-based "duty" not to use a letter vendor under principles of public policy and fairness.

To be clear, RGS is *not* arguing that it can send *any* information about *any* consumer to *any*one it chooses. RGS acknowledges that the dissemination of individuals' private information is a significant concern in today's world. Many companies aggregate highly sensitive personal information (dates of birth, social security numbers, etc.), and then sell that information to shady companies that have nothing to do with the services for which the individual signed up. And many individuals suffer real harm as a result of these practices, most notably, becoming the victims of identity theft or having embarrassing

information shared with family, friends, employers, etc.

However, the general negligence tort, which is a creature of the common law, should be viewed against the backdrop of the common law. As explained above, under long-standing common law agency principles, a company communicating with one hired to undertake a particular task does not qualify as a third-party communication. *Ramirez*, 141 S. Ct. at 2210, n.6; *In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *6; C.J.S. Agency § 1; Restatement (Second) of Agency § 186. Thus, concluding that a company breaches some ill-defined "duty" of "confidentiality" by communicating with its contractors contravenes the common law and threatens to open a pandora's box of litigation over what and with whom information may be shared.

Addressing these kinds of issues should be done by the state and federal legislatures and the executive bodies tasked with protecting consumers, like the FTC and CFPB. Indeed, the FTC and CFPB have imposed strict information-security requirements for debt collectors and the companies they hire to undertake some portion of the collection process, like letter vendors. These federal and state actors are best equipped to consider the multifarious public policy concerns and to fashion across-the-board rules that take into account these concerns. This kind of rulemaking should be done by those actors, rather than through private, individual lawsuits.

For these reasons, and regardless of how the Court construes Plaintiff's FDCPA claim, the Court should conclude that Plaintiff's negligence claim fails as a matter of law.

## V. <u>CONCLUSION</u>

In sum, Plaintiff's theory that RGS violated the law by using a letter vendor goes

too far, and the Court should grant this Motion and dismiss Plaintiff's claims.

Respectfully submitted,

*/s/ Aaron R. Easley*
Aaron R. Easley, Esq.
SESSIONS, ISRAEL & SHARTLE, LLC
3 Cross Creek Drive
Flemington, NJ 08822
Telephone: (908) 237-1660
Facsimile:   877-344-0661
Email: aeasley@sessions.legal
*Counsel for Defendant,*
*Radius Global Solutions, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 31, 2022, a copy of the forgoing was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>*/s/ Aaron R. Easley*</u>
Aaron R. Easley, Esq.